A jury found this appellant guilty of robbery in the first degree under the first count of an indictment, as follows:
 "The Grand Jury of said County charges that before the finding of this Indictment WINFORD RAY HARRIS, ALIAS BILLY RAY HARRIS, ALIAS WINFRED RAY HARRIS, ALIAS WINFRED HARRIS, ALIAS `BO', whose name is otherwise unknown to the Grand Jury, did in the course of committing a theft of one (1) J.C. Penney brand automobile type stereo cassette player, a better description of which is otherwise unknown to the Grand Jury, the property of J.C. Penney Co., Inc., a corporation, threatened the imminent use of force against the person of Larry Pate, a person present, with the intent to compel acquiescence to the taking of or the escaping with the property, while the said WINFORD RAY HARRIS, ALIAS BILLY RAY HARRIS, ALIAS WINFRED RAY HARRIS, ALIAS WINFRED HARRIS, was armed with a deadly weapon, to-wit: a knife, inviolation of Section 13A-8-41 of the Code of Alabama."
A sentence hearing was duly conducted at which the State invoked the provisions of the Habitual Felony Offenders Act, after having given due notice thereof to the defendant, and established by the evidence that he had been previously convicted of three felonies. The trial court fixed his punishment at imprisonment for life without parole pursuant to Alabama Criminal Code § 13A-5-9 (c)(3).
The defendant, an indigent prisoner, was represented in the trial court by an attorney *Page 407 
of the Tuscaloosa County Public Defender's Office. Within, but barely within, the time for filing a motion for a new trial, apro se handwritten motion, captioned "Motion For a New Trial,Or Motion To Reduce Sentence and Motion For Appointment ofCounsel" was filed by defendant. Except for that aspect of the motion asking for the appointment of counsel, the motion was overruled by the court. In accordance with the aspect of the motion asking for the appointment of counsel asserting that defendant had been denied effective assistance of counsel and a request by defendant's trial counsel "that our office be withdrawn as attorney of record in this case and that other counsel be appointed for the appeal of the conviction," the trial court appointed another experienced attorney of the Tuscaloosa Bar to represent appellant, who has ably presented two contentions for a reversal, which we now consider.
The first issue presented by appellant is thus captioned in appellant's brief:
 "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY REFUSING TO GIVE THE DEFENDANT'S REQUESTED CHARGES WHEN THE COURT FAILED TO SUBSTANTIALLY COVER THE INFORMATION COVERED IN THE REFUSED CHARGES."
Defendant's requested written charges, No. 5, 6, 7, and 8 are charges pertinent to lesser included offenses of robbery in the first degree. Although we are not persuaded that appellant is correct in his contention that it was reversible error for the trial court to have refused any of such charges, such charges pertained also to a vital question as to whether there was sufficient evidence to warrant a conviction of defendant of robbery in the first degree, which we will hereinafter consider.
Appellant captions the second issue presented by him as follows:
 "THE TRIAL COURT COMMITTED GROSS PREJUDICIAL ERROR WHEN IT DENIED DEFENDANT'S REQUEST FOR A CONTINUANCE WHICH DENIED DEFENDANT AN OPPORTUNITY TO ADEQUATELY PREPARE A DEFENSE."
Before the commencement of the trial of this case, there was a lengthy in camera hearing conducted, in which defendant's counsel stated that he had represented defendant in a previous robbery case that was tried about three weeks before and was presided over by a judge of the Tuscaloosa Circuit Court other than the trial judge in the instant case and that at such time said attorney had "worked on both cases." The attorney stated further:
 ". . . He was returned to the State [State Prison as distinguished from the County Jail] and was subsequently returned to the Tuscaloosa County Jail this past Thursday. I attempted to see Mr. Harris on Friday. I could not do so because he remained in a cell and would not go to the interview room. On Sunday — yesterday — I sat and talked with Mr. Harris at the jail and it was at that time that he informed me that he was not prepared to go to court on the case that we're in court on today, that he feels that there is a lot that is happening to him. He has some animosity toward the Public Defender's office as being his attorney as well as the judicial system. He indicated that he was planning legal maneuvers concerning his conviction of the case on March the 2d 1982. As I indicated also I informed the District Attorney's office about Mr. Harris' attitude about this case and we're here before the Court and, in addition, I would say that I have talked with him about the facts of the case, I've worked on the case as much as he's asked me to do in preparation of the case. It's at this point that I'll allow Mr. Harris to say to Your Honor whatever he feels is appropriate concerning the case.
 "MR. HARRIS: Your Honor, I feel that they are rushing me. I feel that I ain't ready and they're rushing the case which I just left the Court a week and a half ago and I ain't had time `nuff to do the things I need and get the witnesses and things together, and the things that I *Page 408 
need in this case. I can't see nothing but they just bringing me over here just to — (interrupted).
 "THE COURT: What's the date of the Indictment in this case?
 "MS. BLUME [Assistant District Attorney]: I'll have to go look it up, Your Honor. I believe it's in October of 1981. In fact, this — October 16th, 1981.
 "MR. HARRIS: They took this case over and come before the other one. They took that one and tried that one, you know, so, you know, they put me on pre-trial investigation on the other case which I, you know, I don't know what they trying to do. I weren't up, and they come with this case right behind that case, you know. Try this one before that one had even been tried. I don't know what they trying to do, but I ain't ready for this trial. They just rushing me."
The colloquy among the trial judge, the Assistant District Attorney and the defendant continued, as shown by approximately two more pages of the court reporter's transcript, to the following conclusion of the trial court:
 ". . . The Court has considered the statements of the Defendant and also considered the statements of the State's attorney and the Defense attorney in this case and, therefore, the Defendant's pro se motion for a continuance is denied. The jury has been sent to this Court for the trial of this case and the trial will proceed."
Thereupon, the available jurors were called, questioned, qualified for the panel from which the jury that tried the case was selected, and the trial proceeded.
The only testimony in the case was by witnesses called by the State. According to the undisputed evidence, while the defendant was in the course of committing the theft of a cassette player owned by J.C. Penney Co., he was followed out of the store by an official of J.C. Penney Co. who brought him and the player back into the store. Upon their return to the interior of the store, Mr. Larry Pate, an automotive salesman of the store, called the telephone operator to alert the store security and the police. Mr. Pate testified, inter alia, as follows:
 "Mr. Harris was stating that he was not trying to steal anything. `Do not call the police.' `Please do not call the police.' I do believe Mr. Littlejohn told him that the police had already been called and the police come to the security room, which is in the office area.
"Q. Okay. Did you then proceed to the office area?
"A. Yes, we did.
"Q. Would you please describe who was standing where?
 "A. As I recall, Mr. Lowe was on the right, Mr. Littlejohn was on the left. I was standing behind them. We walked to the office — toward the office area.
 "Q. All right. And is that on a different, let's say, wing of Penney's — the office area?
 "A. Yes, you have — when you leave the automotive you walk down an isle, you take a ninety-degree turn to the left, and then walk about the same distance again.
". . . .
 "Q. What, if anything, happened when you got — when you were almost to the door of the office?
 "A. Mr. Harris made a sudden lunge, threw his arm back, and just lunged out the door.
 "Q. When he made this sudden movement, what, if anything, happened to you?
"A. I was aware of the fact that I had been cut.
 "Q. All right. Could you show the ladies and gentlemen of the jury where you were cut?
"A. I was cut in this area right here (indicating).
". . . .
 "Q. After Mr. Lowe tackled Mr. Winford Ray Harris, what happened?
 "A. Okay. Like I said, I told him — I hollered that he had a knife. I believe Mr. Littlejohn hollered, `Let him go.' He got off — Mr. Lowe got off of Mr. Harris. *Page 409 
Mr. Harris got up and Mr. Lowe proceeded immediately behind him and I proceeded behind Mr. Lowe. And when I got out the door, Mr. Harris had turned around and was running back at Mr. Lowe.
"Q. All right. You were behind Mr. Lowe?
"A. Correct.
"Q. Did you see the knife?
"A. Yes.
". . . .
 "A. Mr. Lowe turned around and turned around. And — (interrupted).
"Q. Did you go back into the store?
"A. We walked back toward the store, yes.
"Q. Okay. Where was Mr. Harris?
 "A. He was approximately in the area where the liquor store is just up from that just a little ways.
"Q. Was he moving?
"A. Yes.
"Q. How was he moving?
"A. Quickly.
"Q. Okay. Was he running?
"A. Yes.
"Q. Was he running away from J.C. Penney?
"A. Yes, he was running in the direction of Pizitz.
". . . .
 "Q. And did you at any time on the night of September 15th have the particular car stereo in your possession?
"A. No.
"Q. Did you see it at any time that night?
"A. Yes.
"Q. Where was it when you saw it?
 "A. Okay. I noticed Mr. Harris had it when he was going out the door. Mr. Lowe had it when he returned.
". . . ."
At the conclusion of the evidence and before the attorneys commenced their arguments to the jury, there was a lengthy incamera colloquy among the trial judge and the attorneys as to the applicable law. During that hearing, counsel for the defendant stated:
 "All right, sir. Now, also, specifically the Defense would move to exclude the State's evidence as to Count one charging Robbery in the First Degree and would argue in support of that Motion that the force or threatened use of force necessary to constitute Robbery is the force or threatened use of force in attempting to detain possession of the property or to effect an immediate escaping with the property and that the evidence in this case points to the fact that the property had been recovered and was in the possession of J.C. Penney's, that some several minutes elapsed before that or any threats or assaults on any person present and we'd argue to the Court that that does not constitute robbery, that it constitutes an assault or a theft and that once a successful theft followed by use of force to resist apprehension it would not constitute robbery and I move to exclude the State's evidence as to Count one in that the evidence does not support a case of Robbery in the First Degree."
There was a response by the attorney for the State expressing disagreement with the position taken by the defendant's attorney. The learned trial judge, whom we recognize as one of the ablest trial judges of Alabama and one who perhaps has no superior in his knowledge and understanding of the relatively new Alabama Criminal Code, made it clear that he disagreed with the position taken by defendant's attorney in his construction of the language of the Code section under which defendant was indicted, and the related language of Alabama Code § 13A-8-43
as follows:
 "(a) A person commits the crime of robbery in the third degree if in the course of committing a theft he:
". . . .
 "(2) Threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property. (Emphasis supplied)." *Page 410 
The first issue presented by appellant by which he contends that the court committed error by refusing to give some of defendant's requested charges does not specifically include the question raised by defendant's attorney in his motion to exclude the evidence as to the crime expressly charged in the indictment of robbery in the first degree, but there is such a close relation between such issue on appeal and the contention of defendant's attorney on the trial, which was rejected by the trial court, that we feel that justice requires, and that procedural law and rules do not prohibit, a determination by us at this time of whether a jury question was presented as to whether defendant was guilty of robbery in the first degree. We appreciate, as did the trial court, the importance of a correct construction of the statute, particularly this language thereof, "with the intent to compel acquiescence to the taking or the escaping with the property," which is also in the indictment. The statutory context of the quoted language is not complete without the inclusion of that part of § 13A-8-41 which states alternatively:
 "(a) A person commits the crime of robbery in the first degree if he violates Section 13A-8-43
[defining and proscribing robbery in the third degree] and he:
 "(1) Is armed with a deadly weapon or dangerous instrument. . . ."
Under the undisputed evidence in the instant case, the defendant neither used nor threatened the use of force against the person of Larry Pate with "the intent to compel acquiescence to the taking of or escaping with the property" as to which he was in the course of committing a theft. At the only time that he used force or threatened the imminent use of force against Mr. Pate, defendant was obviously attempting to escape or otherwise prevent his detention, arrest, and imprisonment, under circumstances that preclude the possibility of any intent on his part to compel acquiescence to the takingof or escaping with the property. He had failed in his attempted theft of the property. It was not on or about him at the time. He had taken it, but thereafter it had been taken from him, and it was not then within his power to take it again. It is understandable that some legislators or some of the eminent lawyers, judges, law professors, and other highly regarded personnel may have intended that conduct such as the defendant committed on the occasion involved be sufficient to constitute robbery and even that such was the intention of the Alabama Legislature in its enactment and adoption of the Alabama Criminal Code, but the statutory language employed does not permit such a construction. As stated by the Alabama Supreme Court per Justice Embry in Town of Loxley v. RosintonWater, Sewer Fire Protection Authority, Inc., Ala.,376 So.2d 705, 708 (1979):
 ". . . In determining what is meant or intended by a statute, the underlying consideration, always, is to ascertain and effectuate the intent of the legislature as expressed in the statutes. While specific language used by the legislature is subject to explanation, such language cannot be detracted from, or added to. May v. Head, 210 Ala. 112, 96 So. 869 (1923). Furthermore, when the language of a statute is clear and unambiguous, there is no room for judicial construction. Employees Retirement System of Alabama v. Head [369 So.2d 1227
(Ala. 1979)], supra. . . ."
In reaching the conclusion that there was no substantial evidence that defendant was guilty of the crime expressly charged in the indictment, we do not overlook, but give full weight to § 13A-8-40, which provides:
 "(a) The definitions contained in Section 13A-8-1 are applicable to this article unless the context otherwise requires.
 "(b) `In the course of committing a theft' embraces acts which occur in an attempt to commit or the commission of theft, or in immediate flight after the attempt or commission."
We do not hold that any of the conduct of the defendant on the occasion involved was not "in the course of committing a theft." We hold that defendant's conduct did not constitute robbery for the reason that he *Page 411 
neither used nor threatened any force against the alleged victim "with intent to compel acquiescence to the taking of or escaping with the property" that he had stolen or had attempted to steal. We do not hold that under the evidence he was not guilty of some lesser included offense.
The judgment of conviction and sentence should be reversed and the cause remanded to the trial court for a new trial as to some lesser included offense or offenses, exclusive of robbery in the third degree, or for any other appropriate proceedings consistent with this opinion.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
REVERSED AND REMANDED.
All the Judges concur.