David H. Gordon was indicted for the offense of robbery in the first degree in violation of § 13A-8-41, Code of Alabama 1975. The jury found the appellant "guilty of robbery in the first degree" (R. 182), and the trial judge sentenced the appellant to twenty (20) years' imprisonment in the state penitentiary. The appellant was further ordered to pay $100.00 to the Crime Victims Compensation Fund.
On August 17, 1988, at approximately 6:48 p.m., Timothy Miller, the loss prevention *Page 902 
manager at Mercantile Stores, Inc., d/b/a Castner-Knott Department Stores, saw an individual whom he recognized as being a former shoplifter. Miller testified that he was involved in an altercation with this individual, later identified as Pamela Hewlett, in 1986 which resulted in her arrest for shoplifting. (R. 13). Miller spotted Hewlett from the store's control monitor room. Miller was accompanied by Michael Jones and Roger Williams in the control room at the time of his observation. Both Jones and Williams were department managers at Castner-Knott on August 17, 1988.
Miller notified Jones and Williams of his suspicion and told them he needed their assistance. Both Jones and Williams also viewed the individual on the monitor, and all three noticed that she was accompanied by a second individual, later identified as this appellant, David Henry Gordon. Jones and Williams were both dispatched to the Stage II junior dress department, the location of Hewlett and this appellant. Miller also radioed Timothy White, a security personnel at Castner-Knott. White immediately went to the Stage II junior dress department.
Miller continued to observe the appellant and Hewlett on the video monitor and attempted to record their actions.
Miller testified that Hewlett took three (3) garments from the hangers. She then proceeded to the back wall of the store. The appellant followed her and Hewlett handed appellant her purse to hold. Miller testified that he "could see a motion behind the rack as if she was stuffing the merchandise into something." (R. 16). Miller stated that Hewlett then stepped from behind the rack and straightened her clothes. Appellant then gave her purse back, and the two promptly exited the store. This testimony was substantiated by the testimony of Jones, who watched Hewlett and appellant through a mirror in the wall at Stage II. Miller further stated that, after the pair left the store, he went behind the racks and found three (3) empty hangers.
White testified that he observed Hewlett and appellant from the shoulders up but could not tell exactly what they were doing. He followed the subjects out of the store and identified himself as a store security person. (This point is disputed by appellant). Hewlett jumped into the passenger side of a light blue Mercedes automobile parked alongside the curb. White immediately stepped next to her to keep her from closing the car door. Shortly thereafter, Jones and Williams arrived at the automobile.
Jones tried to stand between the appellant and the door on the driver's side. Williams approached from behind. According to all three store employees, the appellant kept saying, "What's going on? What's going on?" (R. 37). Although disputed, Jones claimed that he told appellant to calm down, that they worked for the store, and that they needed to talk to him. The appellant continued to push his way past Jones.
At this time, the appellant pulled a gun and pointed it at Jones. Jones yelled, "he has a gun. . . ." (R. 57). Both Jones and Williams backed up, and appellant got into the automobile. The appellant then pointed the gun at White, who was on the other side of the automobile. White backed up and Hewlett closed the door.
Williams moved behind the automobile and memorized the tag number. He then reentered the store, as the automobile pulled off, and telephoned the police. Jones and White attempted to follow the appellant in a second automobile. Miller followed in a third automobile and maintained radio contact with Jones and White by means of walkie-talkies.
Officer Jim Cooke of the Huntsville Police Department testified that Miller pulled up beside his patrol car, told him of the incident, and handed Officer Cooke the walkie-talkie. Officer Cooke heard someone say over the radio: "They are at a cab company on Hall Street." (R. 96). Officer Cooke proceeded to that destination and found the blue Mercedes parked behind the building. The automobile was abandoned. Jones advised Officer Cooke that the pair had fled the automobile. Shortly thereafter, Officer Cooke found Hewlett underneath *Page 903 
a green Chevrolet Nova, which was parked nearby. He placed her under arrest at that time. A second patrol unit located the appellant approximately 100 yards from that location hiding in an automobile.
The appellant was questioned by Officer Danny Cox, a robbery investigator with the Huntsville Police Department. Officer Cox testified that he read appellant his Miranda warnings. According to Officer Cox, appellant stated that he would talk to him at that time. The primary inquiry was about the weapon. The appellant stated that Hewlett had the gun if it was not in the Mercedes. Hewlett claimed she never had the weapon. It was not until the following day, August 18, 1988, that the gun was found under the frame of the Nova by David Lee Watkins, who promptly notified the Huntsville Police Department. The gun was retrieved that same day by Investigator Robert Nance of the Huntsville Police Department.
The State also offered a witness, Walter Humes Allen, who testified that he witnessed someone driving a blue automobile throw a red and white bag from the car. The bag and its contents were turned over to the Huntsville Police Department. Both Miller and another Castner-Knott employee, Lori Sue Page, identified two dresses found in the Mercedes and in the bag as the type of dresses sold by the department store on the date in question.
 I
The appellant contends that the act of theft and the act of force or intimidation with a weapon are severable. He argues that at the time of the theft he was unarmed and caused no physical injury. He stated that he pulled the weapon, a small pistol, from a pouch in the side of his car door (R. 143) at the time of the confrontation, which was outside the store.
Section 13A-8-41, Code of Alabama 1975, defines robbery in the first degree as follows:
 "(a) A person commits the crime of robbery in the first degree if he violates section 13A-8-43
and he:
 "(1) Is armed with a deadly weapon or dangerous instrument. . . ." (Emphasis added).
Section 13A-8-43, Code of Alabama 1975, states as follows:
 "(a) A person commits the crime of robbery in the third degree if in the course of committing a theft he:
 "(1) Uses force against the owner or any person present with intent to overcome his physical resistance or physical power of resistance; or
 "(2) Threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property." (Emphasis added).
Thus, the appellant argues that, since he was not "armed with a deadly weapon" at the time of the theft, he cannot be guilty of robbery in the first degree. The appellant's argument must fail for two reasons: (A) the force or intimidation with a deadly weapon occurred "in the course of committing a theft," Ala. Code §§ 13A-8-40, 13A-8-43, and (B) the fact that the weapon was in his automobile and not on his person is irrelevant.
 A
The appellant relies on Ex parte Sapp, 497 So.2d 550 (Ala. 1986). The Alabama Supreme Court stated therein that, to be guilty under the robbery statutes, "the force or threat must have been used 'in the course of committing' the theft." Id. at 551. Section 13A-8-40, Code of Alabama 1975, states that " '[i]n the course of committing a theft' embraces acts which occur . . . in immediate flight after the attempt or commission."
In Sapp, the defendant took a jacket from Wal-Mart. About five to ten minutes later, the defendant returned to the store wearing the jacket. At this time he was accosted by store personnel, which resulted in a struggle with the defendant. The Supreme Court held that the act of theft had "ceased" at the time of the confrontation. *Page 904 
The appellant further relies on Casher v. State,469 So.2d 679 (Ala.Crim.App. 1985). In Casher, the defendant was approached outside the store regarding the theft of a carton of cigarettes. The defendant voluntarily reentered the store. The manager thereafter told the defendant that he lacked evidence and advised the defendant to leave the store. While exiting, the defendant "bumped" the manager, who felt something. The manager pulled up defendant's shirt, spotted a carton of cigarettes sticking from under defendant's shirt and removed the carton. The defendant pulled a knife and began swinging it at the manager and "anybody around." Id. at 680. The facts revealed at trial that "[t]wo to three minutes elapsed between the time the manager recovered the cigarettes and the time the defendant cut the manager." Id.
This Court held in Casher that the defendant's conviction for robbery was due to be overturned, since the "force" or "physical resistance" did not occur until after the property was abandoned. Id.; citing Harris v. State, 451 So.2d 406,410-11 (Ala.Crim.App. 1984); Annotation, 93 A.L.R.3d 643 (1979).
Both Sapp and Casher are distinguishable, however, as aptly stated in the State's brief. State's Brief, p. 12. In Sapp, the defendant left the store and returned five minutes later, at which time the altercation arose. In the case sub judice the theft and the threat with a deadly weapon occurred during "immediate flight," Ala. Code § 13A-8-40 (1975), from the store. At no time did the store personnel of Castner-Knott lose sight of the appellant from the time of the theft until the time the appellant produced a deadly weapon.
In Casher, the act of violence occurred after the property was removed from the defendant, thus severing the act of theft and assault. In the case sub judice, the appellant and his accomplice were still in possession of the stolen merchandise at the time the appellant pointed the weapon at Castner-Knott's personnel.
 B
Appellant further argues that, if anything, he assisted Hewlett in the crime of shoplifting and not robbery. Appellant's Brief, p. 10.
The appellant offered conflicting testimony that the weapon was not on his person but in a little pouch in the door of his automobile. (R. 143). This evidence was contradicted by testimony of Williams, an employee of Castner-Knott, who stated that appellant pulled the pistol from his right front pocket. (R. 72).
Whether the jury believed the appellant or Williams is not a question to be resolved by this court.
 "The State's evidence was sufficient to prove appellant's guilt beyond a reasonable doubt. Ala. Code § 13-1-70 (1975). Although the evidence was conflicting in certain instances, any differences of fact were resolved by the jury. It is not the function of this court to re-weigh the evidence. We are required to review the evidence presented in the light most favorable to the State, Bass v. State, 55 Ala. App. 88, 313 So.2d 208
(1975), and not to substitute our judgment for that of the jury. Cumbo v. State, 368 So.2d 871
(Ala.Crim.App.). cert. denied, 368 So.2d 877 (Ala. 1979)."
Crumpton v. State, 402 So.2d 1081, 1085 (Ala.Cr.App. 1981). Seealso Giles v. State, 440 So.2d 1237, 1239 (Ala.Crim.App. 1983) ("Where there is evidence from which the jury may by fair inference find the defendant guilty, the trial court should submit the case to the jury to determine the weight it will give the evidence, and this Court should not disturb the verdict."); Simmons v. State, 428 So.2d 218, 219
(Ala.Crim.App. 1983) ("A verdict on conflict evidence is conclusive on appeal."). As a result, the jury's verdict, by implication, properly considered the evidence as presented by the State.
 II
Appellant next contends that admission of a videotape over his objection was reversible error. The appellant bases this contention on the following grounds: (A) The State offered no testimony that the videotape or monitor was free from distortion *Page 905 
or interference which might affect the accuracy of what the tape depicted; and (B) the State failed to properly establish a chain of custody of the videotape.
In Molina v. State, 533 So.2d 701 (Ala.Crim.App. 1988), the defendant raised similar arguments. But here, as there, the appellant's argument must fail.
In Molina, this court acknowledged the "silent witness" theory for admissibility of films, photographs, X-ray photographs, and the like. The crux of this theory is that the item for which admission is sought "is a witness which 'speaks for itself.'" Molina at 710, quoting 3 Wigmore, Evidence § 790 at 220 (Chadbourn rev. 1970). The court in Molina, 533 So.2d at 711, further stated that "[a]s long as satisfactory evidence ofthe integrity of a film or videotape is presented stringent foundational requirements, such as proof of a continuous chain of custody, are now almost universally rejected as unnecessary." C. Scott, 3 Photographic Evidence § 1297 at 95 (2d ed. 1969) (1987 Pocket Part); see also State v. Young,303 A.2d 113 (Me. 1973); State v. Bunting, 187 N.J. Super. 506,455 A.2d 531 (1983). (Emphasis added.)
Therefore, since the State failed to establish a chain of custody, "satisfactory evidence of the integrity of the film" must be present to uphold its authenticity. This court inMolina, relying on the more traditional "pictorial communication" theory, found that a witness who was present during a telephone conversation by the defendant, which was filmed and recorded, and who viewed the film before trial, could testify that the film as shown in court was "accurate." Further, the witness's competency might have been challenged, since he admitted having no "independent recollection prior to seeing the tape" before trial. Molina, at 711. Evidence of this nature does not affect admissibility, but affects only the weight that it should be given by the jury. Id.; see alsoDonahoo v. State, 505 So.2d 1067, 1072 (Ala.Crim.App. 1986). In short, admissibility is in the sound discretion of the trial judge and the item should as a matter of course be admissible where there is a competent witness who can testify that the film or videotape is a "reliable reproduction of the recorded picture and sound." Molina, at 712, citing C. Scott, 3Photographic Evidence § 1297 at 98 n. 42.20 (1987 Pocket Part).
In the case sub judice, the evidence is even more compelling. The operator of the camera and video monitor, Miller, testified as to his own personal observations and the procedure by which he recorded the occurrences in question and he was available for cross-examination. Thus, the admission of the videotape was not erroneous.
 III
Lastly, the appellant contends that the trial judge erred by instructing the jury on the three degrees of robbery and the lesser-included offense of theft, while not supplying a verdict form for theft. The record discloses that, at the request of the appellant, the trial judge interrupted the jury's deliberation to instruct them that they could find the appellant guilty of theft in the second degree if they did not find all of the elements present for robbery in the first, second or third degree. At the close of the trial judge's supplemental instruction, he stated, "Is there anything further from the Defense?" (R. 182). The response of the defense counsel was, "No, Your Honor." (Id.)
The law in Alabama is clear. "The trial court cannot be placed in error on grounds not asserted. [Citations omitted.] The court was required to pass only upon the ground of the objection specified by the appellant and those not announced are waived." Griffin v. State, 500 So.2d 83, 89-90
(Ala.Crim.App. 1986), quoting Johnson v. State, 421 So.2d 1306, 1311
(Ala.Crim.App. 1982). "In the absence of a timely objection to the court's oral instructions in the jury's presence, this court [has] nothing to review. Cox v. State, 280 Ala. 318,193 So.2d 759 (1967)." Griffin, 500 So.2d at 90; Johnson, 421 So.2d at 1311-12. See also Allen v. State, 414 So.2d 989
(Ala.Crim.App. 1981), aff'd, 414 So.2d 993 (Ala. 1982); § 12-16-13, Code of Alabama 1975, as amended. *Page 906 
The appellant's failure to object to the trial judge's omission to provide the jury with a verdict form for theft in the second degree waived his right to raise the matter on appeal.
For the reasons shown, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.