The appellant, Willie Albert Buchannon, was convicted of robbery in the first degree and was sentenced as a habitual offender to life imprisonment. He raises two issues on appeal.
 I
The appellant claims that the evidence was insufficient to sustain a conviction for first degree robbery because, he says, the State failed to prove that he "[t]hreaten[ed] the imminent use of force . . . with intent to compel acquiescence to the taking of or escaping with the property." Ala. Code 1975, §13A-8-43(a)(2).
Wal-Mart discount store security officer Albert Dorn testified that he saw the appellant remove two cartons of cigarettes from a shelf, place them in a styrofoam cooler, and leave the store without paying for any merchandise. Dorn followed the appellant into the parking lot of the Wal-Mart store and asked him to stop, but the appellant, holding the cooler, ran across the street. According to Dorn, "[t]he cooler started busting . . . and the merchandise started to fall out onto the pavement." R. 45. When Dorn stopped to pick up the merchandise, Kevin Smith, another Wal-Mart employee, joined in the chase of the appellant. Dorn and Smith pursued the appellant across several streets and the parking lots of shopping centers, occasionally losing and then regaining sight of him, to "the back of a housing area", where the appellant "pulled out a straight edge razor" and "told [Dorn] to get back." R. 47-48.
Opelika police officers eventually apprehended the appellant, who was lying in some bushes in a nearby wooded area. There were several items of merchandise bearing Wal-Mart price tags on the ground near him.
Section 13A-8-41, Ala. Code 1975, which defines robbery in the first degree, provides, in pertinent part:
 "(a) A person commits the crime of robbery in the first degree if he violates Section 13A-8-43
and he:
 "(1) Is armed with a deadly weapon or dangerous instrument."
Section 13A-8-43, which must be violated in order to constitute robbery in the first degree, provides:
 "(a) A person commits the crime of robbery in the third degree if in the course of committing a theft he:
". . . .
 "(2) Threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property."
Section 13A-8-40(b), Ala. Code 1975, states: " 'In the course of committing a theft' embraces acts which occur in an attempt to commit or the commission of theft, or in immediate flight after the attempt or commission."
The commentary to the robbery statutes explains:
 "There should be no distinction between cases in which force is used to gain possession of another's property and cases in which possession is gained and then force is used to retain possession. . . . In either situation the conduct is dangerous to human life. The expansion [to include use or threat of force in escaping], of course, is limited to threats and assaults to effect an immediate escape. A successful theft followed by the use of force to resist apprehension later would not constitute robbery."
Ala. Code 1975, §§ 13A-8-40 through 13A-8-44 Commentary at 531.
The appellant contends that the State's evidence proved, at most, that he threatened force "to resist apprehension later" rather than to effect an immediate escape. He argues that the threat was not made to "retain possession" of the stolen property because, he says, there was no evidence that when he threatened force he still had possession of any Wal-Mart merchandise. He insists that, for all Dorn and Smith knew, he had dropped *Page 801 
all of the stolen merchandise before he made the threat.
These arguments overlook the evidence presented by the State that when the appellant was apprehended merchandise bearing Wal-Mart price tags was found on the ground near him. The reasonable inference to be drawn from this evidence is that the appellant threatened Dorn and Smith "to retain possession" of other merchandise, which he had not dropped.
Furthermore, it is immaterial whether Dorn and Smith thought the appellant had abandoned the stolen property. The relevant inquiry focuses on the appellant's intent. One is guilty of robbery if he uses or threatens the use of force "with intent to compel acquiescence to . . . escaping with the property." Ala. Code 1975, § 13A-8-43(a)(2). See Gordon v. State,552 So.2d 901, 904 (Ala.Cr.App. 1989) (wherein the court noted that accused was "still in possession of the stolen merchandise at the time [he] pointed the weapon at the [store] personnel"). Compare Casher v. State, 469 So.2d 679, 680 (Ala.Cr.App. 1985), and Harris v. State, 451 So.2d 406, 410 (Ala.Cr.App. 1984) (when victim had already regained control of stolen property, accused's use of force was to resist apprehension, not to escape with the property).
The appellant also argues that because the threat occurred so far from the scene of the theft and after several instances in which his pursuers lost sight of him, it cannot be deemed to have been made in "immediate flight" from the theft. In support of his argument, the appellant cites Laney v. State,417 So.2d 624 (Ala.Cr.App. 1982), McFarland v. State, 581 So.2d 1249
(Ala.Cr.App. 1991), and Gordon v. State, 552 So.2d 901
(Ala.Cr.App. 1989).
In Laney, the shoplifter's threat and apprehension occurred only "thirty feet from the front door of the store." 417 So.2d at 624. That case, however, is not authority for the proposition that, for a threat to be considered to have been made in "immediate flight" from a shoplifting, the threat must be made within the confines of the store's parking lot or any other arbitrary boundary.
We acknowledge that, in McFarland, this Court noted that the accused, who had shop-lifted a screwdriver from a Sears department store, was "constantly under surveillance" by Sears employees until the time of his apprehension, 581 So.2d at 1253, and that in Gordon, we noted that "[a]t no time did the store personnel . . . lose sight of the [accused] from the time of the theft until the time the [accused] produced a deadly weapon," 552 So.2d at 904. However, we do not interpret those cases to establish the rule that a shoplifter's flight is not "immediate" if his pursuers momentarily lose sight of him during a chase.
We hold that as long as the flight, pursuit, and eventual apprehension of the accused are part of a continuous series of events directly precipitated by the accused's theft, then the accused's acts occur in "immediate flight after the . . . commission" of the theft. Compare Ex parte Campbell,574 So.2d 713 (Ala. 1990) (when no evidence established time of collision or time of burglary, the court held that prosecution produced insufficient evidence that accused was in "immediate flight" from scene of burglary when he was involved in fatal automobile collision).
 II
The appellant argues that a statement he made to Opelika Police Investigator Casey Fox was inadmissible and should have been suppressed because, he says, it was made in response to interrogation after he had invoked his right to counsel.
Investigator Fox testified that when he informed the appellant of the rights guaranteed under Miranda v. Arizona,384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the appellant stated that he wanted a lawyer. After the appellant made that request, Fox did not question him. Instead, the appellant asked Fox, "[W]hat, what robbery — what was constituting the robbery?" R. 111-12. Fox replied "that one of the witnesses had said [the appellant] had a knife." R. 112. Investigator Fox did not ask the appellant any questions, but listened as the appellant
 "stated that he had stolen some cigarettes, he had stolen a cooler, some shorts. He *Page 802 
continued to specify that he did not rob anyone. It went on from that to he had stated that he might have had a knife, or might have acted like he had a knife, but he didn't have one." R. 112.
The investigator testified that he never "ask[ed] [the appellant] any questions or engag[ed] in any other conversation than answering [the appellant's] direct questions." R. 112-13.
In Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880,68 L.Ed.2d 378 (1981), the United States Supreme Court held that "an accused, . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police."Edwards, 451 U.S. at 484-85, 101 S.Ct. at 1885. The Court observed that "[h]ad Edwards initiated the meeting on January 20, nothing in the Fifth and Fourteenth Amendments would prohibit the police from merely listening to his voluntary, volunteered statements and using them against him at trial."Id. at 485, 101 S.Ct. at 1885.
In Oregon v. Bradshaw, 462 U.S. 1039, 1045, 103 S.Ct. 2830,2835, 77 L.Ed.2d 405 (1983), the Court defined "initiation" as an inquiry which can be "fairly said to represent a desire on the part of the accused to open up a more generalized discussion relating directly or indirectly to the investigation."
Here, Investigator Fox honored the appellant's request for a lawyer. He did not interrogate the appellant after the appellant invoked his right to counsel. The appellant initiated further conversation with Fox, within the meaning ofEdwards v. Arizona and Oregon v. Bradshaw, when he inquired, "[W]hat, what robbery — what was constituting the robbery?" At that point, although Fox would have been authorized by Edwardsv. Arizona and Oregon v. Bradshaw to interrogate the appellant, he still did not ask the appellant any questions. Instead, he merely answered the appellant's inquiry.
The Supreme Court has defined "interrogation" as "words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301,100 S.Ct. 1682, 1689-90, 64 L.Ed.2d 297 (1980) (footnote omitted). We do not interpret Fox's straightforward answer to the appellant's direct question to be "interrogation." Fox's answer to the appellant's question used no compulsion, ploy, or artifice to prompt a response from the appellant. There is no indication that Fox's answer was "designed to elicit" an incriminating response from the appellant. See Arizona v.Mauro, 481 U.S. 520, 527, 107 S.Ct. 1931, 1935, 95 L.Ed.2d 458
(1987). "The decision [in Mauro] indicates that in the absence of 'compelling influences, psychological ploys, or direct questioning,' the 'possibility' that an accused will incriminate himself, and even the subjective 'hope' on the part of the police that he will do so, is not the functional equivalent of interrogation. Mauro, 481 U.S. at 528-29,107 S.Ct. at 1936-37." Gilchrist v. State, 585 So.2d 165, 175
(Ala.Cr.App. 1991)
Because Fox did not interrogate the appellant after the appellant invoked his right to counsel and then initiated further conversation, the State was not required to show that the appellant waived his previously invoked right. SeeOregon v. Bradshaw, 462 U.S. at 1044, 103 S.Ct. at 2834 ("even if a conversation taking place after the accused has 'expressed his desire to deal with the police only through counsel,' is initiated by the accused, where reinterrogation follows, the burden remains upon the prosecution to show that subsequent events indicated a waiver of the Fifth Amendment right to have counsel present during the interrogation") (emphasis added). The appellant's statements were admissible and the motion to suppress was correctly denied.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur. *Page 1134