BROWN, Judge.
The appellant, Lewis Andrew Lattimore, was convicted of robbery in the first degree, a violation of § 13A-8-41, Code of Alabama 1975, and felony murder, a violation of § 13A-6-2(a)(3), Code of Alabama 1975. He was sentenced as a habitual offender, with four prior felony convictions, to life imprisonment without the possibility of parole.
The evidence presented at trial established that shortly before 1:00 p.m. on October 3, 1994, the appellant and Willie Arthur Stall-worth entered the Riverside Food and Meat Market, located at 1129 Bell Street in Montgomery. The cashier saw the men pick up several items and approach the counter. After the cashier rang up the items, Stallworth pointed a black revolver at the cashier and demanded that the cashier give him the contents of the cash register. While Stallworth pointed the revolver at the cashier, the appellant removed approximately $2,500 in cash from the cash register. The appellant also took the cashier’s wallet from the cashier’s pants pocket. Stallworth and the appellant then fled the scene. As the cashier watched the two men flee toward Covington Street, another employee telephoned 911 to report the robbery.
The 911 call to the Montgomery Police Department was received at 1:01:24 p.m. Approximately 80 seconds later, at 1:02:45 p.m., the police radio dispatcher advised all patrol cars that an armed robbery had just occurred at 1129 Bell Street, and that the two black males who had robbed the business were last seen proceeding on foot toward Covington Street. Almost immediately, several officers in the vicinity of the meat market began radioing the dispatcher for additional information concerning the suspects. Corp. Lewis arrived at the market moments later. Lewis radioed that the clerk could recall only that one of the robbers was wearing a light-colored jacket and dark jeans. Officer Moore also radioed that he was in the area, and was proceeding toward the crime scene.
At 1:07:56 p.m., Sgt. J.R. Ward radioed, stating that he had spotted “two black males running, running from me on Greyhound Street, running back toward the railroad tracks.” Sgt. Ward then asked the dispatcher to repeat the description of the suspects. Less than a minute after he radioed that he had seen the suspects, Sgt. Ward radioed that he had been shot. The time of this radio transmission was 1:08:47 p.m.
Corp. Williamson, hearing that Sgt. Ward had been shot, rushed to the area. When he arrived, a pedestrian pointed him toward the scene of the shooting on Loring Street, approximately one block from Greyhound Street. Williamson approached Sgt. Ward, who was lying face down in the street. Williamson felt for Ward’s pulse, but could not detect one. He also noted that Sgt. Ward was “extremely blue in color.” Later that *1002 day, Sgt. Ward died from a gunshot wound to his chest.
George Sanders, a resident of Loring Street, testified that shortly before the shooting, he noticed two black males walking on Luverne Street. One of the men was tall and slim, the other shorter and stockier. Sanders stated that both men were wearing blue jeans. He recalled that the shorter man was wearing a black sleeveless “muscle shirt,” but he could not recall what type shirt the taller man was wearing. Sanders stated that when the two men saw a police car on Greyhound Street, they began to run in different directions. The taller man ran into the woods, and the shorter man ran around the corner onto Loring Street. Seconds later, Sanders heard gunshots. He ran around the corner and saw a police officer lying in the street. Sanders approached the officer and saw blood coming out of his mouth. Sgt. Ward tried to speak, but he was unable to do so. As Sanders stood there, more police officers arrived on the scene, and he retreated.
Later that afternoon, Sgt. Blake saw the appellant in the Riverside housing project, which is located north of Bell Street and a few blocks from the site of the robbery. When the appellant saw Sgt. Blake, he attempted to flee. Sgt. Blake gave chase. When the appellant stopped, Sgt. Blake noticed that the appellant made a motion with his hands before he complied with Blake’s order to lie face down on the ground. When Sgt. Blake and Corp. Markham approached the appellant, they noticed a pocketknife and some money strewn on the ground near the appellant. They collected the knife and currency as evidence.
The appellant was advised of his Miranda [1] rights at the scene, and he was then transported to the Montgomery police station. At 5:35 p.m., he executed an explanation of rights form. Later that evening, the appellant was again advised of his 'rights and he subsequently made a statement, admitting that he and Willie Arthur Stallworth had robbed the Riverside Food and Meat Market earlier that day. The appellant described Stallworth as shorter and stockier than he was.
The appellant told the police that the robbery was Stallworth’s idea. The appellant stated that while Stallworth held a revolver on the clerk, he took money from the cash register. The appellant also admitted that he took the clerk’s wallet from his pants pocket. The appellant stated that after they left the market, they ran from Bell Street toward the railroad tracks. After they crossed the railroad tracks, the appellant and Stallworth stopped in a wooded area for a moment to divide the robbery proceeds. The appellant also removed his shirt, so that he was wearing only a T-shirt. The two men walked out of the wooded area, and passed by Daisy Lawrence elementary school.
The appellant told the police that Stall-worth shot Sgt. Ward.[2] The appellant stated that when he and Stallworth spotted the police car, they split up. The appellant stated that he ran into the woods and that Stallworth continued up the street. Moments later, the appellant heard gunshots.
When asked about the money found on the ground when he was arrested, the appellant stated that the money was his share of the robbery proceeds.
I.
The appellant contends that the state failed to present sufficient evidence to support his conviction for felony murder. We disagree.
A person commits the crime of felony murder if “[h]e commits or attempts to commit ... robbery in any degree, ... and, in the course of and in furtherance of the crime that he is committing or attempting to commit, or in immediate flight therefrom, he, or another participant if there be any, causes the death of any person.” § 13A-6-2(a)(3), Code of Alabama 1975. See also Mitchell v. State, 706 So.2d 787 (Ala.Cr.App.1997). The appellant does not dispute that he and Stall-worth were accomplices in the robbery of the Riverside Food and Meat Market, and he *1003 does not dispute that Stallworth shot and killed Sgt. Ward. Rather, he maintains that there was insufficient proof that he was in “immediate flight” from the robbery when Stallworth shot and killed Sgt. Ward. An examination of the record establishes otherwise.
The question of what constitutes immediate flight for purposes of a felony-murder prosecution has rarely been addressed; our research indicates only a few reported decisions addressing this issue.[3] In Ex parte Campbell, 574 So.2d 713 (Ala.1990), the defendant was convicted of first-degree burglary and of felony murder. The felony-murder conviction arose out of an automobile accident that occurred while Campbell was speeding away from a home he had burglarized. The accident, which resulted in the death of the victim, occurred 0.8 miles from the site of the burglary and Campbell still had the stolen property in the trunk of his car. On appeal, Campbell argued that the state had failed to prove that he was in “immediate flight” from the scene of the burglary; therefore, he argued, he could not be convicted of felony murder. Despite the evidence, the Alabama Supreme Court agreed with Campbell, holding ■ that there was not sufficient evidence to sustain the felony conviction for murder because the burglary could have occurred at any time during a six-hour time period before the collision. 574 So.2d at 716. The facts of the present case differ markedly from the facts in Campbell. Not only was the appellant still in the vicinity of the robbery and in possession of a part of the robbery proceeds, but also, there is no dispute that the homicide occurred within minutes after the robbery, the underlying felony.
The appellant cites no Alabama cases to support his argument that the state failed to establish that he was in “immediate flight” from the robbery. He has, however, cited People v. Gladman, 41 N.Y.2d 123, 390 N.Y.S.2d 912, 359 N.E.2d 420 (1976), in support of his argument. A review of this case reveals that it fails to support the appellant’s position. Indeed, this case supports the conclusion that the appellant and Stallworth were in “immediate flight” from the robbery. We note with approval the following language from Gladman:
“Under the new formulation, the issue of whether the homicide occurred in ‘immediate flight’ from a felony is only rarely to be considered as a question of law for resolution by the court. (People v. Carter, 50 AD.3d[A.D.2d] 174, 176, 377 N.Y.S.2d 256, 257.) Only where the record compels the inference that the actor was not in ‘immediate flight’ may a felony murder conviction be set aside on the law. Rather, the question is to be submitted to the jury, under an appropriate charge. The jury should be instructed to give consideration to whether the homicide and the felony occurred at the same location or, if not, to the distance separating the two locations. Weight may also be placed on whether there is an interval of time between the commission of the felony and the commission of the homicide. The jury may properly consider such additional factors as whether the culprits had possession of the fruits of criminal activity, whether the police, watchmen or concerned citizens were in close pursuit, and whether the criminals had reached a place of temporary safety. These factors are not exclusive; others may be appropriate in differing factual settings. If anything, past history demonstrates the fruitlessness of attempting to apply rigid rules to virtually limitless factual variations. No single factor is neces *1004 sarily controlling; it is the combination of several factors that leads to a justifiable inference.
“In this case, the jury could properly find, as a question of fact, that the killing of Officer Rose occurred in immediate flight from the delicatessen robbery. The shooting occurred less than 15 minutes after the robbery and less than a half mile away. The defendant had made off with cash proceeds and was attempting to secure his possession of the loot. The police had reason to believe that the robber was still in the immediate vicinity and had taken steps to seal off avenues of escape. In this regard, the absence of proof as to why Officer Rose turned into the bowling alley parking lot is no deficiency. The standard is not whether the police officer subjectively believed that the defendant was the robber. Indeed, the defendant’s own apprehension may be more valuable. The defendant’s response to the observation of the police car was to seek an immediate hiding place. This indicates that the defendant perceived that the police were on his trail. The record does not indicate that the officer knew or supposed, that defendant committed a crime; it does indicate the defendant feared that the officer possessed such knowledge. Additionally, the defendant had not reached any place of temporary safety. In short, there is evidence from which the jury could conclude, as it did, that the defendant was in immediate flight from the robbery and that he shot the officer in order to make good his escape with the loot.”
41 N.Y.2d at 129, 390 N.Y.S.2d at 917, 359 N.E.2d at 424-25.
In deciding whether the state presented sufficient evidence to support a conviction, this Court must view the evidence in the light most favorable to the prosecution. Bayhi v. State, 629 So.2d 782, 788 (Ala.Cr.App. 1993). We must accept as true evidence introduced by the prosecution, make all legitimate inferences from that evidence, and consider that evidence in the light most favorable to the prosecution. McKinney v. State, 654 So.2d 95, 99 (Ala.Cr.App.1995); Johnson v. State, 623 So.2d 444, 447 (Ala.Cr.App.1993).
The evidence established that the initial radio transmission advising all patrol officers that a robbery had been committed at 1129 Bell Street was made at 1:01:24 p.m. Sgt. Ward radioed that he had seen the two robbery suspects at 1:07:56 p.m., approximately six and one-half minutes later. Sgt. Ward gave his location as Greyhound Street, not far from the site of the robbery. When Sgt. Ward began to pursue the suspects, they separated and ran in different directions. The appellant ran into a wooded area, and Stallworth ran down the street. Sgt. Ward, still in his patrol car, pursued Stallworth down the street and onto nearby Loring Street. Less than one minute later, at 1:08:47 p.m., Sgt. Ward radioed that he had been shot. State’s Exhibit 37, a map on which all the relevant locations are marked, demonstrated the proximity of the meat market, the railroad tracks, and the woods to Greyhound and Loring Streets, where Sgt. Ward initially saw the appellant and Stall-worth. Given that Sgt. Ward was shot roughly less than eight minutes after learning of the robbery, together with the fact that the shooting took place only a few blocks from the robbery, we conclude that there was sufficient evidence from which the jury could find that the appellant and Stallworth were in “immediate flight” from the robbery when the shooting occurred.
We do not consider the fact that the two men stopped momentarily to divide the stolen money to be an “intervening event” sufficient to break the chain of causation. See Weidler v. State, 624 So.2d 1090, 1093 (Ala.Cr.App.1993); Shirah v. State, 555 So.2d 807, 812 (Ala.Cr.App.1989). That act does not establish that they believed that they were no longer being pursued, or that they had reached a place of temporary safety. Rather, it could just as easily establish that the pair believed that they might have to “split up” while fleeing, and that each robber wanted to have his share of the proceeds in his possession if they did have to separate. The jury was free to reject the appellant’s contention that he believed that he had reached a place of temporary safety in the woods. The *1005 jury’s apparent rejection of this contention is certainly reasonable in light of the fact that the appellant was without any means of transportation, he was still within blocks of the robbery scene, and only minutes had passed since the robbery.
Certainly, the police had reason to believe that the robbery suspects were still in the immediate vicinity: the robbery victim had last seen the robbers fleeing on foot, and the police had taken steps to seal off possible avenues of escape from the neighborhood. Moreover, the fact that the appellant and Stallworth started to run when they saw Sgt. Ward’s patrol ear further indicates that the pair believed that the police were “on their trail.” See, Gladman.
In this case, the trial court correctly instructed the jury regarding “immediate flight.” Its instruction stated:
“Immediate flight is defined as a continuous series of events directly precipitated or caused by the Defendant’s initial criminal conduct. All acts by the Defendant that occur as a continuous series of events directly precipitated or caused by the Defendant’s initial criminal conduct are done so in immediate flight. The phrase, ‘immediate flight therefrom,’ means what it says. To determine if an event is in the immediate flight therefrom, you may look at the time that elapsed from the robbery, the place of the incident, the intervening factors after the robbery and whether or not the participants in the robbery reached a safe place after the robbery and before the shooting.
“I charge you that in considering whether an event happened during the course of a felony or immediate flight therefrom, you must consider whether an event was in one continuous chain of events or whether there were intervening factors before the incident. If you find that the shooting was not a part of one continuous chain of events then you cannot find the Defendant guilty of felony murder.”
(R. 274-75.) All evidence presented at trial logically pointed to only one conclusion — that the appellant and Stallworth were in “immediate flight” from the scene of the robbery when the shooting occurred. Certainly, it was foreseeable to the appellant that Stall-worth would be willing to use his weapon to avoid capture by law enforcement officials.
Based on the foregoing, we conclude that the state presented sufficient evidence to the jury from which it could find that the appellant and Stallworth were in “immediate flight” from the scene of the robbery at the time Stallworth shot Sgt. Ward, and it could, therefore, find the appellant guilty of felony murder based on accomplice liability.
II.
The appellant contends that the trial court erred by admitting into evidence State’s Exhibits 91, 92, 93A, 93B, 93C, and 94. Exhibit 91 was an audiotape of the police radio transmissions beginning just before the police dispatcher advised all patrol cars of the robbery at 1129 Bell Street and ending shortly after Sgt. Ward’s transmission stating that he had been shot. Exhibit 92, which was three pages long, was a transcription of Exhibit 91. Exhibits 93A, 93B, and 93C were the three pages of Exhibit 92, which had been enlarged for use by testifying witnesses. The record is unclear as to whether these three exhibits were admitted into evidence.[4] Exhibit 94 was a “time line” prepared by one of the state’s witnesses, which established the exact time frame covered by Exhibit 91.
The state contends that the issue whether the trial court erred in admitting State’s Exhibit 91 was not preserved for our review because the audiotape recording was played for the jury before counsel made his objection. However, our examination of the record shows that the trial court advised defense counsel that his objection to this exhibit would be “taken up on the record at break” and that the exhibit was being conditionally admitted “subject to your objection that you’re going to put on at break.” (R. 85-87.) Given the trial court’s com- *1006 ménts, we conclude that the appellant’s objection to the admission of State’s Exhibit 91 was sufficient to preserve this issue for appellate review.
Corp. Williamson testified that Exhibit 91 was a true and accurate representation of the police radio transmissions he heard on the afternoon of October 3,1994. Accordingly, Exhibit 91 was properly admitted.
“[W]hen a qualified and competent witness can testify that the sound recording or other medium accurately and reliably represents what the witness sensed at the time in question, then the foundation required is that for the ‘pictorial communication’ theory. Under this theory, the party offering the item must present sufficient evidence to meet the ‘reliable representation’ standard, that is, the witness must testify that the witness has sufficient personal knowledge of the scene or' events pictured or the sounds recorded that the item offered accurately and reliably represents the actual scene or sounds.”
Ex parte Fuller, 620 So.2d 675, 678 (Ala.1993). See also C. Gamble, McElroy’s Alabama Evidence § 123.02(1) (5th ed.1996).
Likewise, we find that the trial court correctly admitted Exhibit 92, the transcript of Exhibit 91, after it had been properly authenticated by Corp. Williamson. Battle v. State, 645 So.2d 344, 346-47 (Ala.Cr.App.1994). Moreover, Exhibits 93A, 93B, and 93C, enlargements of Exhibit 92, were merely cumulative and simply aided the witnesses’ testimony concerning the events surrounding the robbery and shooting. The admission of cumulative evidence, even upon an undisputed fact, is not prejudicial error. Williams v. State, 710 So.2d 1276 (Ala.Cr.App.1996), aff'd, 710 So.2d 1350 (Ala.1997); see also C. Gamble, McElroy’s Alabama Evidence § 10.07 (5th ed.1996). Even if the exhibits were not formally admitted, no error occurred in allowing the exhibits to be used in connection with the officers’ testimony. See McCray v. State, 548 So.2d 573, 575 (Ala.Cr.App.1988); Miller v. State, 518 So.2d 801, 806 (Ala.Cr.App.1987).
Exhibit 94, the exhibit creating a “time line,” was prepared by state’s witness John Gallups. Gallups, a former police officer, testified that following Sgt. Ward’s shooting he used the police department’s radio system to prepare a time line of all of the radio transmissions from just before the report of the robbery until just after Sgt. Ward radioed that he had been shot. Gallups first explained how the police radio transmission system operated. He stated that a backup tape of all police radio transmissions was maintained by the police department and was kept in the police department’s communication room. Gallups listened to the police radio transmissions and also compared the backup tape of the transmissions with a transcript of the transmissions (Exhibit 92). He then explained how he used the communications equipment, together with the backup tape to determine the precise moment that a radio transmission occurred. Gallups’s testimony sufficiently established the “silent witness” theory of admission. See Ex parte Fuller, 620 So.2d at 678; C. Gamble, McEl-roy’s Alabama Evidence at § 123.02(1).
Based on the foregoing, the state properly authenticated, and laid the appropriate foundation for the admission of, State’s Exhibits 91, 92, 93A, 93B, 93C, and 94. Accordingly, no basis for reversal exists.
The judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. At the appellant’s trial, the parties stipulated to this fact.

. Our research reveals that the question of what constitutes "immediate flight” arises more frequently in those cases involving fleeing shoplifters who resist arrest and who are subsequently charged with, and convicted of, third-degree robbery. In such cases, this Court has held that as long as the flight, pursuit, and eventual apprehension of the accused are part of a continuous series of events directly precipitated by the accused’s initial criminal conduct, then the accused’s acts occur in "immediate flight” from the commission of that crime. See Fuqua v. State, 706 So.2d 817 (Ala.Cr.App.1997) (the fact that the appellant managed to elude her pursuer for eight minutes did not mean that she was not in “immediate flight,” as the search for the appellant began almost immediately and continued, without interruption, until the appellant was located); Buchannon v. State, 652 So.2d 799, 801 (Ala.Cr.App.1994) (the fact that pursuers momentarily lost sight of a suspect did not mean that the flight was not "immediate”).

. Our examination of the trial transcript suggests that Exhibits 93A, 93B, and 93C were admitted into evidence. (R. 87.) However, the court reporter’s list of exhibits does not include these three exhibits. (R. IB.)