878 So.2d 1208 (2003)
Kirby Leon INGRAM
v.
STATE of Alabama.
CR-01-2224.
Court of Criminal Appeals of Alabama.
February 28, 2003.
Opinion on Return to Remand August 29, 2003.
*1210 Kimberly Griffin Kervin, Prattville (withdrew 7/1/03); Richard D. Lively, Prattville (appointed 7/28/03), for appellant.
William H. Pryor, Jr., atty. gen., and Jean-Paul M. Chappell, asst. atty. gen., for appellee.
SHAW, Judge.
The appellant, Kirby Leon Ingram, was convicted of robbery in the third degree, a violation of § 13A-8-43(a)(1), Ala.Code 1975. He was sentenced to one year and one day in prison.
On appeal, Ingram contends that the evidence was insufficient to sustain his conviction because, he says, the State failed to prove a prima facie case of third-degree robbery.
"`In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.'" Ballenger v. State, 720 So.2d 1033, 1034 (Ala.Crim.App.1998), quoting Faircloth v. State, 471 So.2d 485, 488 (Ala.Crim.App.1984), aff'd, 471 So.2d 493 (Ala.1985). "`The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.'" Nunn v. State, 697 So.2d 497, 498 (Ala.Crim.App.1997), quoting O'Neal v. State, 602 So.2d 462, 464 (Ala.Crim.App.1992). "`When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court's decision.'" Farrior v. State, 728 So.2d 691, 696 (Ala.Crim.App.1998), quoting Ward v. State, 557 So.2d 848, 850 (Ala.Crim.App.1990). "The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury." Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978).
"When reviewing a trial court's denial of a motion for a judgment of acquittal, this court must determine `whether there existed legal evidence before the jury, at the time the motion was made, from which the jury by fair inference could have found the appellant guilty.'" McCart v. State, 765 So.2d 21, 27 (Ala.Crim.App.1999), quoting Breckenridge v. State, 628 So.2d 1012, 1018 (Ala.Crim.App.1993). See also Ex parte Fitkin, 781 So.2d 182, 183 (Ala.2000)("The trial court's denial of a motion for a judgment of acquittal must be reviewed by determining whether there was legal evidence before the court at the time the motion was made from which, by fair inference, the defendant could be found guilty."). Ingram moved for a judgment of acquittal at the close of the State's case; however, he did not renew the motion at the close of all the evidence or include this claim in his motion for a new trial. Therefore, we consider only the State's evidence in reviewing this claim.
Chris Gray, a member of the loss-prevention staff at a Wal-Mart discount department store in Prattville, testified that on February 14, 2000, he saw an individual, who was later identified as Ingram, pushing a shopping cart piled with clothes around the store. Gray testified that he *1211 saw Ingram place approximately 10 boxes containing watches from the jewelry department in the cart under the pile of clothing and then continue walking around the store. Suspicious, Gray followed Ingram and saw Ingram open the watch boxes and conceal the watches in his pants pockets as he was walking around the store. Gray testified that after Ingram had removed all of the watches from their boxes and placed them in his pockets, he left the store without paying for the merchandise. Gray followed Ingram outside into the parking lot where he and Ed Seamon, the parking lot security guard, approached Ingram. Gray identified himself as a member of the loss-prevention staff for Wal-Mart, and asked Ingram to return to the store to discuss the stolen merchandise. Gray stated that he told Ingram several times that they were going to the office in the back of the store to fill out paperwork and to discuss the items that had been taken.
Both Gray and Seamon testified that they then escorted Ingram back into the store, and that as they approached the doors leading to the back area of the store, Ingram tried to flee.[1] Both Gray and Seamon testified that they grabbed Ingram to stop him from fleeing, and that Ingram fought them, attempting to escape. Gray testified that he and Seamon were still struggling with Ingram and trying to subdue him when Daniel Fells, an officer with the Prattville Police Department at that time, arrived at the scene. Officer Fells testified that when he arrived, he saw Wal-Mart loss-prevention personnel struggling with Ingram, and he attempted to handcuff Ingram. Ingram kept struggling. After Ingram was finally subdued and handcuffed, Officer Fells conducted a pat-down search and discovered watches and a knife that were the property of Wal-Mart in Ingram's pants pockets.
Citing Ex parte Sapp, 497 So.2d 550 (Ala.1986), Ingram argues that he could not be convicted of robbery in the third degree because, he says, the theft was completed when he left the store without purchasing the watches and the knife. According to Ingram, because the only force he used was after the theft was completed, when he was being escorted to the rear of the store, "he neither used nor threatened any force against the Wal-Mart employees `with intent to compel acquiescence to the taking of or escaping with the property' that he had stolen or had attempted to steal." (Ingram's appellate brief at p. 12.)
Section 13A-8-43(a), Ala.Code 1975, provides, in relevant part:
"(a) A person commits the crime of robbery in the third degree if in the course of committing a theft he:
"(1) Uses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance."
"`In the course of committing a theft' embraces acts which occur in an attempt to commit or the commission of theft, or in immediate flight after the attempt or commission." § 13A-8-40(b), Ala.Code 1975. The Committee Comments to §§ 13A-8-40 through 13A-8-44, Ala.Code 1975, provide:
"There should be no distinction between cases in which force is used to gain possession of another's property and cases in which possession is gained and *1212 then force is used to retain possession.... In either situation the conduct is dangerous to human life. The expansion [by statute of the definition of common-law robbery], of course, is limited to threats and assaults to effect an immediate escape. A successful theft followed by use of force to resist apprehension later would not constitute robbery."
In Ex parte Sapp, the appellant stole a jacket from a Wal-Mart discount department store and left the store. He returned to the store approximately 5 to 10 minutes later wearing the jacket. When he attempted to leave the store a second time, a security officer stopped him. After examining the jacket and determining that it belonged to Wal-Mart, the security officer informed the appellant that he would need to stay in the store until the police arrived. At that point, the appellant became hostile, grabbed the jacket, and attempted to leave the store. A struggle ensued, and the appellant eventually fled the scene. The Alabama Supreme Court held that the acts of the appellant did not constitute robbery, stating:
"The armed force ... was not used `in the course of committing' the theft or `in immediate flight after the ... commission,' but took place after the theft itself clearly had ceased. In short, the statutes applicable here have not transposed theft into robbery."
497 So.2d at 551.
Similarly, in Casher v. State, 469 So.2d 679 (Ala.Crim.App.1985), the appellant had stolen a carton of cigarettes from a convenience store, and was approached by the manager after he left the store. He voluntarily went back inside the store and the manager retrieved the carton of cigarettes from the appellant's person. When the manager told a store employee to telephone the police, the appellant pulled out a knife, cut the manager on the face, and fled. This Court held that the appellant's actions did not constitute robbery because the force used against the manager was not used "`"with intent to compel acquiescence to the taking of or escaping with the property" that he had stolen or had attempted to steal'" but, rather, was used only after the stolen property had been returned to its owner. Casher, 469 So.2d at 680, quoting Harris v. State, 451 So.2d 406, 410 (Ala.Crim.App.1984).
However, in Buchannon v. State, 652 So.2d 799 (Ala.Crim.App.1994), this Court stated:
"We hold that as long as the flight, pursuit, and eventual apprehension of the accused are part of a continuous series of events directly precipitated by the accused's theft, then the accused's acts occur in `immediate flight after the ... commission' of the theft. Compare Ex parte Campbell, 574 So.2d 713 (Ala.1990)(when no evidence established time of collision or time of burglary, the court held that prosecution produced insufficient evidence that accused was in `immediate flight' from scene of burglary when he was involved in fatal automobile collision)."
652 So.2d at 801. In Gordon v. State, 552 So.2d 901 (Ala.Crim.App.1989), this Court found that the use of a pistol in a parking lot in an effort to elude capture by store personnel was in the course of committing the theft. In addition, in Fuqua v. State, 706 So.2d 817 (Ala.Crim.App.1997), this Court held that where the appellant fled a clothing store in a mall with stolen merchandise, eluded store personnel in the mall for approximately eight minutes until she was located in another store by mall security, pushed the security personnel and ran toward the exit of the mall where a further struggle took place, the appellant had committed a robbery because the *1213 force she had used occurred in immediate flight from the theft.
The present case is more akin to Buchannon, Gordon, and Fuqua, than it is to Ex parte Sapp and Casher. Viewed in a light most favorable to the State, the evidence showed that Ingram was approached immediately upon leaving the store; that, although he voluntarily reentered the store with Gray and Seamon, when they got near the back of the store, Ingram attempted to flee, and a struggle resulted; and that Ingram was still in possession of the stolen merchandise at the time of the struggle. Ingram's attempted flight, the struggle, and his eventual apprehension were all part of a continuous chain of events directly precipitated by Ingram's theft of the watches and knife. Thus, accepting as true all evidence introduced by the State, viewing that evidence in a light most favorable to the State, and affording the State all legitimate inferences therefrom, we find that the State presented sufficient evidence from which the jury could have reasonably concluded that Ingram's use of force, unlike in Ex parte Sapp and Casher, was used in an attempt to flee with the stolen merchandise and thus, was used with intent to compel acquiescence to the taking of or escaping with the stolen property.
Therefore, the trial court did not err in denying Ingram's motion for a judgment of acquittal at the close of the State's case.
Although we affirm Ingram's conviction, we must remand this case for resentencing because we find that Ingram's sentence was illegal. "Matters concerning unauthorized sentences are jurisdictional," Hunt v. State, 659 So.2d 998, 999 (Ala.Crim.App.1994); therefore, we may take notice of an illegal sentence at any time. See, e.g., Pender v. State, 740 So.2d 482 (Ala.Crim.App.1999).
Ingram was convicted of third-degree robbery, a Class C felony, and was sentenced to imprisonment for a term of one year and one day. At trial, on direct examination, Ingram admitted that he was currently in prison for a third-degree-burglary conviction. In addition, on cross-examination, the following occurred:
"[Prosecutor]: You told [defense counsel on direct examination] that you're wearing white because you're in prison; is that correct?
"[Ingram]: That's right.
"[Prosecutor]: Do you have a couple of burglary thirds out of Talladega in 1983?
"[Ingram]: Yes I do.
"[Prosecutor]: Do you have a burglary second out of Talladega in [19]93?
"[Ingram]: Yes, sir.
"[Prosecutor]: A burglary third?
"[Ingram]: Yes, sir.
"[Prosecutor]: And you have a theft second out of Montgomery in May of 2001?
"[Ingram]: Yes, sir."
(R. 60-61.) Thus, Ingram admitted at trial to at least five prior felony convictions.
Before trial, the State filed notice of its intent to invoke the Habitual Felony Offender Act, § 13A-5-9, Ala.Code 1975. On the day he was sentenced, Ingram filed a "Motion to Strike the State's Notice to Pursue Habitual Offender Act." (C. 39-41.) At the beginning of the sentencing hearing, the trial court stated that it would allow the State 14 days to respond to the motion and that it would hold a hearing on the motion if necessary. However, the trial court then immediately proceeded to sentence Ingram to one year and one day. It does not appear from the record that the State responded to Ingram's motion or that the trial court ever ruled on the motion.
*1214 Section 13A-5-9(c)(1), Ala.Code 1975, provides:
"(c) In all cases when it is shown that a criminal defendant has been previously convicted of any three felonies and after such convictions has committed another felony, he or she must be punished as follows:
"(1) On conviction of a Class C felony, he or she must be punished by imprisonment for life or for any term of not more than 99 years but not less than 15 years."
(Emphasis added.) The Habitual Felony Offender Act is mandatory. See Gholston v. State, 620 So.2d 719, 724 (Ala.1993)("The Habitual Felony Offender Act is mandatory and must be applied whenever a repeat offender with a prior felony conviction is convicted of another felony."). See also Spooney v. State, 844 So.2d 615 (Ala.Crim.App.2001), and Wilson v. State, 727 So.2d 869 (Ala.Crim.App.1998)(both remanding for resentencing with proper application of the Habitual Felony Offender Act).
With five prior felony convictions, the minimum sentence Ingram could receive under § 13A-5-9(c)(1), Ala.Code 1975, was 15 years' imprisonment. His sentence of one year and one day was, therefore, illegal. Thus, we must remand this case for the trial court to conduct another sentencing hearing and to resentence Ingram in accordance with the Habitual Felony Offender Act. Due return shall be filed with this Court no later than 70 days from the date of this opinion. The return to remand shall include a transcript of the resentencing proceedings.
AFFIRMED AS TO CONVICTION; REMANDED FOR RESENTENCING.
McMILLAN, P.J., and COBB, BASCHAB, and WISE, JJ., concur.

On Return to Remand
SHAW, Judge.
In an opinion issued on February 28, 2003, this Court affirmed Kirby Leon Ingram's conviction for third-degree robbery. However, we noticed that Ingram's sentence  imprisonment for a term of one year and one day  was invalid under § 13A-5-9(c)(1), Ala.Code 1975. We remanded the case for the trial court "to conduct another sentencing hearing and to resentence Ingram in accordance with the Habitual Felony Offender Act." Ingram v. State, 878 So.2d 1208, 1214 (Ala.Crim.App.2003).
On April 4, 2003, the trial court conducted another sentencing hearing and resentenced Ingram to 15 years' imprisonment;[1] the trial court split that sentence pursuant to § 15-18-8, Ala.Code 1975, and again sentenced Ingram to one year and one day in prison.
Section 13A-5-9(c)(1), Ala.Code 1975, provides:
"(c) In all cases when it is shown that a criminal defendant has been previously convicted of any three felonies and after such convictions has committed another felony, he or she must be punished as follows:
"(1) On conviction of a Class C felony, he or she must be punished by imprisonment for life or for any term of not more than 99 years but not less than 15 years."
Thus, the 15-year sentence imposed by the trial court on return to remand is within the statutory range. Additionally, nothing *1215 in our original opinion precluded the trial court from splitting that sentence pursuant to § 15-18-8, Ala.Code 1975.
However, § 15-18-8, Ala.Code 1975, as amended effective May 25, 2000, provides, in pertinent part:
"(a) When a defendant is convicted of an offense and receives a sentence of 20 years or less in any court having jurisdiction to try offenses against the State of Alabama and the judge presiding over the case is satisfied that the ends of justice and the best interests of the public as well as the defendant will be served thereby, he or she may order:
"(1) That the convicted defendant be confined in a prison, jail-type institution, or treatment institution for a period not exceeding three years in cases where the imposed sentence is not more than 15 years, and that the execution of the remainder of the sentence be suspended notwithstanding any provision of the law to the contrary and that the defendant be placed on probation for such period and upon such terms as the court deems best."
(Emphasis added.) In Madden v. State, 864 So.2d 395 (Ala.Crim.App.2002), this Court stated:
"The plain language of [§ 15-18-8] indicates that a trial court can split a sentence only if the defendant is placed on probation for a definite period following the confinement portion of the split sentence. Indeed, this Court has recognized that `[a]pplication of § 15-18-8 necessitates suspension of that portion of the split sentence that is not actual confinement and placement of the convicted defendant on probation....' Hughes v. State, 518 So.2d 890, 891 (Ala.Crim.App.1987). In addition, `in view of the history and text of Amendment 38 [of the Alabama Constitution of 1901, from which a trial court's power to suspend a sentence stems,] the power to suspend a sentence ... can only be exercised when coupled with an order for probation.' Holman v. State, 43 Ala.App. 509, 513, 193 So.2d 770, 773 (1966)(emphasis added [in Madden])."
864 So.2d at 398. The trial court did not order Ingram to serve a definite period of probation following the confinement portion of his sentence. Therefore, although the 15-year sentence is valid, the execution of that sentence, i.e., split to serve one year and one day in prison with no probationary term, is illegal.
Accordingly, we remand this case for the trial court to conduct another sentencing hearing and to reconsider the execution of Ingram's 15-year sentence. As we have previously stated, pursuant to § 13A-5-9(c)(1), the 15-year sentence itself is within the statutory range for a conviction of third-degree robbery, a Class C felony, where the offender has three or more prior felony convictions, and is, therefore, a valid sentence. "Only the manner in which the trial court split the sentence is illegal." Austin v. State, 864 So.2d 1115, 1118 (Ala.Crim.App.2003). Because the 15-year sentence was valid, the trial court may not change it. See Wood v. State, 602 So.2d 1195 (Ala.Crim.App.1992). However, the court may either split the sentence in compliance with § 15-18-8, i.e., ordering no more than three years in confinement followed by a definite period of probation, or, if it determines that splitting the sentence is no longer appropriate, it may reinstate the full 15-year sentence.
Based on the foregoing, we remand this case to the trial court for resentencing. Due return shall be filed with this Court no later than 42 days from the date of this opinion and shall include a transcript of the proceedings conducted on remand.
*1216 REMANDED WITH DIRECTIONS.[*]
McMILLAN, P.J., and COBB, BASCHAB, and WISE, JJ., concur.
NOTES
[1] Gray testified that they were approximately 30 feet from the doors when Ingram tried to flee and that Ingram ran approximately 10-12 feet from them before they caught him. Seamon stated that they were only about 2-3 feet from the doors when Ingram turned and attempted to flee and that Ingram did not get 10-12 feet away before being caught. Other than these discrepancies, Gray's and Seamon's testimony was virtually identical.
[1] A copy of the transcript from that proceeding was not made a part of the record on return to remand. However, a copy of the trial court's sentencing order was submitted on return to remand.
[*] Note from the reporter of decisions: On November 14, 2003, on return to second remand, the Court of Criminal Appeals affirmed, without opinion.