The Mobile Circuit Court convicted William Felix Verzone of first-degree armed robbery, committed while the manager of a gasoline service station was making a night deposit at an AmSouth Bank branch. The trial court sentenced him to 20 years in prison; the sentence was split so that he was to serve 3 years in detention and 5 years on supervised probation.
The evidence presented at trial showed the following. Juliann Bradford picked up her sister Melanie Frazier after Frazier's shift at the Pilot Service Center, a gasoline service station and convenience store. Frazier and Bradford went to the AmSouth Bank to deposit that day's receipts, and Bradford got out of the car holding the deposit bag. An armed man wearing a ski mask ran up to Bradford, pointed a gun at her, and demanded the money. Bradford gave the man the deposit bag; he jumped into a Mazda Protege automobile and fled. Bradford and Frazier followed the Mazda in their car while Bradford *Page 400 
telephoned emergency 911 on her cellular telephone. After they lost sight of the Mazda, Bradford and Frazier went back to the Pilot Service Center and telephoned the police, who arrived shortly after the call to interview them.
Suspicion fell on William Verzone, Kali Verzone, Carl Bailey, and Debra Jones. All four were arrested for the robbery the same night it occurred. The testimony of William Verzone's codefendants suggested that he helped plan and direct the robbery and that he aided in hiding evidence after the robbery. The evidence indicates that it was Carl Bailey, wearing a ski mask, who drove up to the AmSouth Bank in a Mazda automobile, robbed Bradford at gunpoint, got back into the Mazda, and fled.
Bailey testified that he and Debra Jones lived in William Verzone and Kali Verzone's home. Bailey testified that William Verzone suggested that they rob the Pilot Service Center and that he agreed to do so to pay Verzone for debts he owed him for drugs Verzone had supplied to Bailey. Bailey stated that Verzone gave him a cellular telephone so that Bailey and Verzone could communicate about the robbery. Bailey stated that Verzone followed Frazier and Bradford from the Pilot Service Center to the bank, and that Verzone telephoned Bailey to tell him when the women got to the bank and to describe their car. Nowhere in the record, however, is there any evidence presented by the State indicating that police found a cellular telephone that had been used during the robbery, or that the police had verified Bailey's story by checking telephone records. Nor does the record contain any evidence presented indicating that Verzone was in the vicinity of the bank when Bailey carried out the robbery.
Bailey also testified that after the robbery, Verzone told him to hide the getaway car behind Verzone's automobile body shop. Bailey worked in the same building in which Verzone's body shop did business, and the State in its brief to this Court points to no evidence to corroborate the assertion that Verzone instructed Bailey to hide the getaway car there. Bailey also claims that Verzone gave him the gun used and the clothes worn during the robbery. Verzone acknowledged that the gun (which was found in the laundry room of the house Verzone shared with Bailey) belonged to him, but he denied giving it to Bailey for the robbery. There is no evidence indicating that the clothes Bailey was wearing during the robbery (which were found in a shed behind the house) were not Bailey's.
The admitted involvement of Verzone's wife Kali weakens the corroborative implication of the gun. Kali formerly worked at the Pilot Service Center, and thus had inside information about how the service station handled its deposits. Frazier testified that the night of the robbery, she received a telephone call from Kali, who was trying to determine when Frazier was going to leave the service station. Frazier testified that Kali had never telephoned her at work before that night.
Kali testified at trial regarding her involvement in the robbery. Kali admitted telephoning Frazier to try to determine when Frazier would be making the deposit. She also admitted that she had disposed of the checks taken during the robbery, and she directed police to a ditch where the checks, wadded into a ball and wrapped with duct tape, were found. Kali also told police where they could find the clothes Bailey was wearing during the robbery when investigators came to the Verzones' house to investigate Kali's telephone call to Frazier at the service station. Also, after all of the other defendants had been taken by police to the police station, Kali *Page 401 
told the investigators that they could find the money stolen from the service station hidden in a pillowcase on her bed.[1] The police found the money there.
Verzone appealed his conviction on these facts, arguing that the evidence at trial presented a fatal variance between his conviction and his indictment in that the indictment charged him with the first-degree armed robbery of Melanie Frazier, while the evidence at trial showed that Juliann Bradford had been robbed at gunpoint. Verzone also argued that the evidence at trial was not sufficient to convict him because, he says, the only evidence against him was the uncorroborated testimony of his accomplices.
The Court of Criminal Appeals affirmed Verzone's conviction in an unpublished memorandum, finding that the indictment sufficiently apprized Verzone with a reasonable degree of certainty of the nature of the accusation against him, citing Moore v. State, 659 So.2d 205, 208
(Ala.Crim.App. 1994). See Verzone v. State (No. CR-01-0698, May 24, 2002), 860 So.2d 918 (Ala.Crim.App. 2002) (table). The Court of Criminal Appeals also found that the independent evidence against Verzone sufficiently corroborated his codefendants' testimony against him to support his conviction. Verzone petitioned this Court, and we granted certiorari review to consider the merits of Verzone's arguments. We reverse and remand.
Verzone argues that the Court of Criminal Appeals' decision in his case conflicts with Ex parte A.T.M., 804 So.2d 171 (Ala. 2000), and Ex parteHightower, 443 So.2d 1272 (Ala. 1983), because, he says, the explanations of the fatal variances in those cases are analogous to the variance in his case; thus, he asserts, the Court of Criminal Appeals' decision in his case is in error.
Verzone quotes Ex parte A.T.M. for the following holding:
 "[T]he evidence affirmatively proved that T.R. was not the alleged victim Kamatra R., and the record contains no evidence that A.T.M. sexually abused any Kamatra R. Because the State could seek to indict A.T.M. for the sexual abuse of T.R. on the basis of T.R.'s testimony, allowing the State to produce the same evidence — the testimony of T.R. — to prove the sexual abuse of `Kamatra R.' by A.T.M. would be `substantially injurious' to A.T.M."
804 So.2d at 173-74. He also cites Ex parte Hamm, 564 So.2d 469,471 (Ala. 1990),[2] for the following holding:
 "A variance in the form of the offense charged in the indictment and the proof presented at trial is fatal if the proof offered by the State is of a different crime, or of the same crime, but under a set of facts different from those set out in the indictment. Ex parte Hightower, 443 So.2d 1272, 1274 (Ala. 1983)."
In Verzone's case, his indictment alleged as follows:
 "[Verzone] did in the course of committing a theft of property to-wit: lawful United States currency and/or checks, the property of Pilot Service Center, use or threaten the imminent use of force against the person of Melanie Frazier, with intent to compel acquiescence to the taking of or escaping with the property, while the said William Verzone or another participant was armed with a deadly weapon or dangerous instrument, *Page 402 
to-wit: a gun, in violation of § 13A-8-41(a)(1) of the Code of Alabama, against the peace and dignity of the State of Alabama."
While the Court of Criminal Appeals upheld Verzone's conviction under the theory that Verzone's indictment sufficiently informed him of the charges he faced so that he could mount a defense, this Court, in Exparte A.T.M., quoted Rupert v. State, 45 Ala. App. 84, 86, 224 So.2d 921,922 (1969), for the proposition that "`to be material, a variance as to the name alleged in the indictment from that proved by the evidence must be such as to be misleading or substantially injurious to the accused in making his defense, or to expose him to the danger of a second trial on the same charge.'" 804 So.2d at 173.
The State argues that Pilot Service Center was the true owner of the money, that Pilot Service Center was mentioned in the indictment, and that, therefore, Verzone was properly informed of the charges against him. In support of this argument, the State cites McKeithen v. State,480 So.2d 36, 38 (Ala.Crim.App. 1985):
 "`There is no requirement in establishing a prima facie case of robbery that the property stolen belong to the robbery victim. . . . There is no material variance between an indictment which charges that the property taken was the personal property of a named individual and proof showing that the property belonged to another. . . .'"
Quoting Raines v. State, 429 So.2d 1104, 1106 (Ala.Crim.App. 1982). However, the McKeithen case did not hold that a variance in the identity of the robbery victim was not a material variance; instead, it held that the fact that the property stolen did not actually belong to the person from whom it was stolen was not a material variance.
The State's emphasis on the ownership of the property is misplaced, because Verzone was not charged with theft of property. Instead, he was charged with robbery, which is a crime against the person; it does not require that a theft be accomplished for the elements of robbery to be established.[3]
Section 15-8-90, Ala. Code 1975, provides: "An indictment may be amended, with the consent of the defendant entered of record, when the name of the defendant is incorrectly stated or when any person, property or matter therein stated is incorrectly described." Section 15-8-91
continues: "If the defendant will not consent to such amendment of an indictment, the prosecution may be dismissed at any time before the jury retires as to the count in the indictment to which the variance applies, and the court may order another indictment to be preferred at a subsequent time . . . ." These statutes suggest that where there is a material variance, such as incorrectly describing a person (such as the victim) in the indictment, an amendment of the indictment is appropriate for a valid prosecution.
In this case, the State made no attempt to amend or dismiss the indictment charging the armed robbery of Melanie Frazier and to reindict Verzone under a new indictment properly charging him with the armed robbery of Juliann Bradford. The State's failure to do so resulted in a fatal *Page 403 
variance between Verzone's indictment and the proof presented at trial, and Verzone's conviction under the original indictment is therefore void.
We are persuaded that indicting Verzone for the armed robbery of Frazier, when the evidence at trial indicated that Bradford was the robbery victim, "expose[d] him to the danger of a second trial on the same charge" for the robbery of Juliann Bradford. Ex parte A.T.M., 804 So.2d at 173. We therefore reverse the judgment of the Court of Criminal Appeals and remand the case for further proceedings consistent with this opinion.[4]
REVERSED AND REMANDED.
MOORE, C.J., and LYONS, BROWN, JOHNSTONE, HARWOOD, and WOODALL, JJ., concur.
[1] Kali was apparently allowed to remain at home because the investigating officer did not want to expose her four-month-old child to the unusually cold night air.
[2] In his brief to this Court, Verzone says this language is fromEx parte Hightower, but it is actually a quotation from Ex parteHamm citing Ex parte Hightower.
[3] See § 13A-8-41, Ala. Code 1975 ("[a] person commits the crime of robbery in the first degree if he violates Section 13A-8-43 [robbery in the third degree] and he: (1)Is armed with a deadly weapon . . . ."). See also the annotations to this Code section, under III.B., "Taking," which state: "The present robbery statutes do not require a `taking' of property, . . . [so that] the indictment need not allege an actual theft to constitute the offense. Grace v. State, 431 So.2d 1331 (Ala. Crim App. 1982)."
[4] Because we hold that the Court of Criminal Appeals erred in affirming Verzone's conviction, we need not address his other argument that his conviction should be reversed because it was based solely on the uncorroborated testimony of his codefendants.