BURKE, Judge.
Bryant Bernard Evans appeals his four convictions for first-degree robbery, violations of § 13A-8-41, Ala.Code 1975. Evans was sentenced, as a habitual offender, to life imprisonment without parole for each conviction.
On February 6, 2009, the grand jury returned four indictments against Evans, charging him with four counts of first-degree robbery. Each indictment involved a different victim but stemmed from the same set of facts. The four victims were Joshawan Brown, Larry Hunter, Michael Rutledge, and Frank Bowden. The cases were consolidated for trial, which began on May 10, 2010.
At trial, Rutledge testified that he was the owner of A Cut Beyond barbershop. According to Rutledge, one day in August 2008, when he arrived to open the barbershop for the day, a few customers were waiting for him in the parking lot. After Rutledge let those customers inside the barbershop, he “noticed a short fellow walk from the top of the hill down past [the] shop, and maybe two minutes later he turned around and came back from down in the alley and walked back up towards the shop.” (R. 109.) Rutledge explained that the man walked through the parking lot, which was right in front of his barbershop. Rutledge did not know that man. Rutledge testified that the man passed by the barbershop, but, a few minutes later, the man returned, and Evans was with him. Rutledge knew Evans because he had sold magazines to Rutledge and had gotten a shave from Rutledge in the past.
After they entered the barbershop, Evans stood in the middle of the shop, and the shorter man stood by the door holding a blue gym bag in his hands. Evans then pulled a gun from his waistband. At that time, Rutledge was cutting Brown’s hair. *768 Initially, Evans pointed the gun at Bowden and Hunter, who were in the waiting area of the barbershop, and told them not to move. Evans then pointed the gun at Rutledge, but Brown “rushed” Evans and a “tussle” ensued. (R. 112.) Rutledge then grabbed his gun from a nearby counter and shot twice at Evans. At that time, Rutledge did not know whether either shot hit Evans, but Rutledge found out later that he had hit Evans. As Evans was fleeing the barbershop, he dropped his white baseball cap and his gun. Rutledge testified that Evans left the barbershop and then ran to the right. Rutledge further testified that he did not see the men get into their vehicle because it was parked behind the barbershop. After making sure that everyone in the barbershop was unhurt, Rutledge called emergency 911.
Rutledge testified that the police quickly responded to his call. When the police arrived at the barbershop, Rutledge met them outside. The owner of a nearby business was also standing outside, and he pointed toward an older model Chevrolet automobile that was smoking badly as it drove away and told police: “There they go right there.” (R. 116-17.) The police pursued the car and apprehended Evans along with the other man who had entered the barbershop with Evans earlier.
Hunter testified that he was sitting in the waiting area of the barbershop with Bowden when a “taller guy” and a “shorter guy” entered the barbershop. (R. 173.) The shorter guy was holding a blue bag. According to Hunter, “the taller guy came in and lifted up his shirt and brought a gun out, pointed it toward me and [Bowden], the guy that was sitting there, told us nobody move.” (R. 173.) The man with the gun then walked toward Rutledge and the man who was getting a haircut and pointed the gun at them. Hunter testified that the man getting his haircut grabbed the arm of the man with the gun and they began “tussling.” (R. 174.) Hunter then heard two gunshots. Hunter testified that the taller guy was shot in the back and that, after the taller guy was shot, he dropped his gun and fled. Hunter stated that he “did see the little ragged car going down the street that they were in, little Chevy.” (R. 179.) Shortly after the men were apprehended by the police, Hunter was able to identify them by height and size. Hunter also stated that the blue bag was outside the car when he identified the men.
Darryl Myers, a police officer for the Birmingham Police Department, testified that, on August 22, 2008, he responded to a call about a robbery in progress at the A Cut Beyond barbershop. When Officer Myers arrived at the scene, two men who were standing outside the barbershop pointed out to him that the two suspects were driving away in a tan-colored Chevrolet car. Officer Myers pursued the car and stopped it. After the car stopped, the driver got out of the car and started walking away. Officer Myers ordered the driver to stop. Initially, the driver responded that he was going to his aunt’s house, but, after Officer Myers drew his weapon and ordered the driver to get down on the ground, the driver complied with Officer Myers’s order. At trial, Officer Myers identified Evans as the person who was seated in the passenger’s seat of the car when it was stopped. Officer Myers also testified that, when he saw Evans in the car that day, Evans had been shot. Officer Myers checked the vehicle-identification number (“VIN”) of the car and the license plate that was on the car, and he discovered that the VIN and the license plate were not registered to the same person.
*769 Evans’s medical records showed that he was admitted to UAB Hospital on August 22, 2008, with a single gunshot wound through the left side of his chest. DNA testing showed that the DNA profile of blood found at the barbershop matched Evans’s DNA profile.
At the close of the State’s evidence, Evans moved for a judgment of acquittal on the ground that the State’s evidence was insufficient to support a finding of guilty on any of the first-degree-robbery charges. Specifically, Evans alleged that the State failed to set forth sufficient evidence indicating that Evans intended to deprive any person of his property. (R. 262-64.) The trial court denied that motion. After the motion was denied, the defense rested.
On May 12, 2010, the jury found Evans guilty of four counts of first-degree robbery. On June 21, 2010, Evans filed a pro se motion for a new trial. On June 25, 2010, the trial court sentenced Evans, as a habitual offender, to life imprisonment without the possibility of parole for each conviction. On August 16, 2010, the trial court denied Evans’s motion for a new trial. On September 1, 2010, Evans appealed his convictions to this Court.
I.
On appeal, Evans first alleges that the trial court erred in denying his motion for a judgment of acquittal because, he says, the State presented insufficient evidence to support any of his first-degree-robbery convictions. Specifically, Evans appears to argue that the State did not present sufficient evidence indicating that he intended to deprive any of the victims of their property.
Section 13A-8-41(a), Ala.Code 1975, provides:
“A person commits the crime of robbery in the first degree if he violates Section 13A-8^43 and he:
“(1) Is armed with a deadly weapon or dangerous instrument; or
“(2) Causes serious physical injury to another.”
Section 13A-8-43(a), Ala.Code 1975, provides:
“A person commits the crime of robbery in the third degree if in the course of committing a theft he:
“(1) Uses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance; or
“(2) Threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property.”
Furthermore, “robbery ... is a crime against the person; it does not require that a theft be accomplished for the elements of robbery to be established.” Ex parte Verzone, 868 So.2d 399, 402 (Ala.2003). “Proof of an actual taking of property is not required to sustain a conviction for robbery.” Craig v. State, 893 So.2d 1250, 1256 (Ala.Crim.App.2004). “ ‘[T]he former crime of attempted robbery now constitutes robbery.’ ” Casey v. State, 925 So.2d 1005, 1006 (Ala.Crim.App.2005) (quoting Petty v. State, 414 So.2d 182, 183 (Ala.Crim.App.1982)).
Concerning the sufficiency of the evidence to sustain a conviction, this Court has held:
“ ‘ “In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.” ’ Ballenger v. State, 720 So.2d 1033, 1034 *770 (Ala.Crim.App.1998), quoting Faircloth v. State, 471 So.2d 485, 488 (Ala.Crim.App.1984), aff'd, 471 So.2d 493 (Ala.1985). ‘ “The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.” ’ Nunn v. State, 697 So.2d 497, 498 (Ala.Crim.App.1997), quoting O’Neal v. State, 602 So.2d 462, 464 (Ala.Crim.App.1992). ‘ “When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court’s decision.” ’ Farrior v. State, 728 So.2d 691, 696 (Ala.Crim.App.1998), quoting Ward v. State, 557 So.2d 848, 850 (Ala.Crim.App.1990). ‘The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.’ ”
Ingram v. State, 878 So.2d 1208, 1210 (Ala.Crim.App.2003), quoting Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978). Furthermore,
“ ‘[c]ircumstantial evidence is not inferior evidence, and it will be given the same weight as direct evidence, if it, along with the other evidence, is susceptible of a reasonable inference pointing unequivocally to the defendant’s guilt. Ward v. State, 557 So.2d 848 (Ala.Cr.App.1990). In reviewing a conviction based in whole or in part on circumstantial evidence, the test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. Cumbo v. State, 368 So.2d 871 (Ala.Cr.App.1978), cert. denied, 368 So.2d 877 (Ala.1979).’ ”
“Ward, 610 So.2d at 1191-92.”
Lockhart v. State, 715 So.2d 895, 899 (Ala.Crim.App.1997).
Concerning intent, this Court has held:
“[I]ntent is a question for the jury. ‘Intent, ... being a state or condition of the mind, is rarely, if ever, susceptible of direct or positive proof, and must usually be inferred from the facts testified to by witnesses and the circumstances as developed by the evidence.’ Pumphrey v. State, 156 Ala. 103, 47 So. 156, 157 (1908).”
McCord v. State, 501 So.2d 520, 528-29 (Ala.Crim.App.1986).
In the present case, considering, as we must, all the evidence in a light most favorable to the State, we hold that a rational finder of fact could have found Evans guilty beyond a reasonable doubt of all four counts of first-degree robbery. The evidence presented by the State indicated that Rutledge saw the shorter man walk past the barbershop twice in the space of approximately two minutes and then return to the barbershop with Evans a few minutes later. Based on that evidence, the jury could have reasonably inferred that Evans and his accomplice were surveying the scene immediately before they entered the shop. The State’s evidence further indicated that the shorter man was carrying a blue gym bag that could be used to carry away property; that, after entering the shop, Evans produced a gun, threatening everyone in the shop; that, after an altercation, Evans and the shorter man fled in a car that had been parked out of sight; and that the VIN and license plate on the car were not registered to the same person. Based on those *771 facts, contrary to Evans’s allegation, the jury could have reasonably inferred that Evans intended to compel the acquiescence of everyone in the barbershop to the taking or escaping with property.
The dissent takes issue with our conclusion that the jury could have reasonably inferred that Evans and his accomplice were surveying the scene immediately before they entered the shop. Again, Rutledge testified that he saw the shorter man walk past the barbershop twice in the space of approximately two minutes and then return to the barbershop with an armed Evans a few minutes later. Based on the circumstances as a whole, it seems highly probable that the men were surveying the scene. It is unlikely that the shorter man just happened to be strolling back and forth in front of the barbershop for pleasure a few minutes before he entered the barbershop with an armed man. In any event, it is the duty of the jury, not this Court, to determine factually whether the men were surveying the scene. We hold that the jury certainly could have reasonably inferred that the men were surveying the scene.
Next, while agreeing that the gym bag that was carried by the shorter man could be used to carry away property, the dissent points out that the gym bag could also be used to carry gym clothes, groceries, burglary tools, or a vast variety of other items. We agree. However, again, it was the duty of the jury to decide, in the context of all the evidence presented, whether the purpose of the gym bag was to carry away property or to carry something else. The jury certainly could have inferred that the purpose of the gym bag was to carry away property. It is not unreasonable or mere guesswork to conclude that when a man carrying a gym bag enters a store with an armed accomplice, the man is intending to use that gym bag to carry away property.
The dissent also takes issue with our statement that Evans and the other man fled in a car that had been parked “out of sight.” Rutledge, who was in the barbershop when Evans fled, testified that the car was parked behind the building and out of his sight. Rutledge also testified that the parking lot was in front of the barbershop and within his sight. Considering that Evans and his accomplice chose not to park their car in the parking lot in front of the barbershop before entering the barbershop wielding a gun, the jury could have reasonably inferred that Evans and his accomplice had purposefully attempted to hide the car from the sight of the people in the barbershop, whom Evans and his accomplice intended to accost.
We conclude that the State presented evidence from which the jury could have reasonably inferred that Evans intended to compel the acquiescence of everyone in the barbershop to the taking or escaping with property. Therefore, we hold that the State presented sufficient evidence to support Evans’s four convictions for first-degree robbery; thus, the trial court did not err in denying Evans’s motion for judgment of acquittal.
II.
Lastly, Evans alleges that his convictions in the two cases that named Brown and Bowden as the victims should be reversed. Specifically, Evans alleges that, in those two cases, he was “denied his fundamental right to cross-examine adverse witnesses against him as is guaranteed by the Sixth Amendment of the U.S. Constitution” because Brown and Bowden signed affidavits in support of a warrant for Evans’s arrest, but neither Brown nor Bow-den testified at trial. (Evans’s brief, at 31-32.)
*772 Evans’s allegation is completely without merit. The affidavits signed by Brown and Bowden in support of an arrest warrant were not presented to the jury at trial. The Confrontation Clause of the Sixth Amendment to the United States Constitution gives the accused in a criminal prosecution only the right “to be confronted with the witnesses against him.” While the Confrontation Clause applies to in-court testimony and some out-of-court statements introduced at trial, Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), it does not apply to out-of-court statements that are not introduced at trial. Therefore, Evans’s allegation does not present a valid ground for the reversal of his convictions.
Furthermore, this issue is barred from appellate review because Evans did not present this specific issue to the trial court.
“ ‘Review on appeal is restricted to questions and issues properly and timely raised at trial.’ Newsome v. State, 570 So.2d 703, 717 (Ala.Crim.App.1989). ‘An issue raised for the first time on appeal is not subject to appellate review because it has not been properly preserved and presented.’ Pate v. State, 601 So.2d 210, 213 (Ala.Crim.App.1992).”
Ex parte Coulliette, 857 So.2d 793, 794 (Ala.2003). “Even constitutional issues must first be raised before the trial court or they are waived.” Stanley v. State, 723 So.2d 821, 822 (Ala.Crim.App.1998). Therefore, because this issue was not properly raised at trial, the issue is waived.
Moreover, this claim is not properly before this Court for review because Evans has failed to comply with Rule 28(a)(10), Ala. R.App. P., which requires that an argument in an appellate brief contain “the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on.” This Court has stated: “ ‘It is not the job of the appellate courts to do a party’s legal research. Nor is it the function of the appellate courts to “make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.” ’ ” Hodges v. State, 926 So.2d 1060, 1074 (Ala.Crim.App.2005), quoting Pileri Indus., Inc. v. Consolidated Indus., Inc., 740 So.2d 1108, 1110 (Ala.Civ.App.1999). Furthermore, “[r]ecitation of allegations without citation to any legal authority and without adequate recitation of the facts relied upon has been deemed a waiver of the arguments listed.” Skinner v. State, 843 So.2d 820, 827 (Ala.Crim.App.2002). In his brief to this Court, Evans does not cite any legal authority to support his claim. Therefore, Evans’s bare allegation does not satisfy the requirements of Rule 28(a)(10), Ala. R.App. P.; thus, the issue is waived.
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
WINDOM, KELLUM, and JOINER, JJ., concur. WELCH, P.J., dissents, with opinion.